IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
PLANO DIVISION

| | |
|---|---|
| CONSTANCE SWANSTON and<br>WOMEN'S ELEVATED SOBER LIVING LLC.<br><br>Plaintiffs,<br><br>v.<br><br>WINDHAVEN FARM HOMEOWNERS ASSOCIATION, INC. and KENDAL REED,<br><br>Defendants | CIVIL ACTION NO. 4:19-cv-00151 |

## COMPLAINT

Constance Swanston and Women's Elevated Sober Living LLC file this Complaint as follows:

**PARTIES**

1.  Constance Swanston ("Swanston") is an individual residing in the Eastern District of Texas. She is the managing member of Women's Elevated Sober Living LLC..

2.  Women's Elevated Sober Living LLC ("Elevated") is a Texas Limited Liability Company that provides support services for drug and alcohol addicts who are in recovery and qualify as "handicapped" under the provisions of the Fair Housing Act. Its principal place of business is at 7849 Cassion Drive, Frisco, Texas 75034-0209 in the Eastern District of Texas.

3.  Windhaven Farm Homeowners Association, Inc. (the "HOA") is a Texas nonprofit corporation. It may be served with process by serving its registered agent for service, First Service Residential Texas, Inc. at its registered address 3102 Oaklawn Avenue, Suite 202, Dallas, Texas 75219.

4. Kendal Reed ("Reed") is an individual residing at 5749 Meadowhaven Drive, Plano, Collin County, Texas.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 because the claims herein are based on the private cause of action granted in 42 U.S.C. §3613(a) and therefore arise under the laws of the United States.

6. Venue is proper in this Division and District pursuant to 28 U.S.C. §1391(b)(2) because the events or omissions giving rise to the claims alleged in this Complaint occurred and are occurring in this district in Plano, Texas, located in Collin County, Texas.

## FACTS

### A. The work of Elevated helping addicts in recovery

7. Elevated is in the business of helping drug and alcohol addicts in recovery remain sober while they regain the skills needed for independent living. The individuals served by Elevated are in recovery from addictions that significantly limited one or more of their major life activities. Thus, they thus have a "handicap" as defined in the Fair Housing Act.

8. The services provided by Elevated are critical for the residents because they cannot live independently or with their natural families and rely on the peer pressure of living with others in recovery to maintain their freedom from addiction and ability to work and participate in society.

9. A large body of scientific evidence proves that sober living facilities greatly reduce the risk that an individual in recovery will relapse into the use of drugs or alcohol. In a report recently provided to this Court in another case, a copy of which is attached as Exhibit 1, Dr. John Majer states:

> Recovery homes are instrumental in helping recovering persons overcome their functional impairments while supporting their efforts toward ongoing abstinence. Recovery homes are effective, life-saving, community-based treatments that typically exist in

residential neighborhoods. . . . Research has shown recovery homes produce unparalleled therapeutic benefits for their residents with positive, second-order effects upon their neighboring communities.

10. Dr. Majer's report, citing various scientific studies, finds that residents of sober living facilities are almost twice as likely to remain sober after two years of recovery compared to individuals who only participate in a twelve-step program or other form of after-care treatment. This is consistent with a 2010 study in the Journal of Substance Abuse Treatment showing that recovering addicts who passed through a structured residential environment were significantly less likely to face relapse or arrest as well as other studies showing similar benefits.[1]

11. It is equally well established that the presence of sober living facilities has no negative impact on property values.[2]

12. In order to confirm that individuals applying to live in an Elevated sober living house are handicapped as defined in the Fair Housing Act Elevated takes the following steps:

   a. Elevated requires that applicants have abstained from drugs or alcohol for at least 20 days and confirms this with a drug and alcohol test before the application is accepted. This confirms that they are in recovery and are not current users of drugs or alcohol.

   b. Elevated requires that applicants explain in their application how their addiction has substantially limited a major life activity.

   c. Elevated engages in an extensive interview with the applicant to determine that the applicant is committed to remaining sober and needs the services Elevated provides in order to do so. This interview confirms that they applicant is not able to live independently while remaining sober, which constitutes a substantial limitation on the major life activity of caring for oneself.

   d. Elevated requires residents to sign a house contract agreeing to abide by all the rules of the house, including those that promote accountability and participation in events intended to help residents regain the ability to live independently.

---

[1] See, "Building Recovery: State Policy Guide for Supporting Recovery Housing" published by the National Council for Behavioral Health at www.thenationalcouncil.org. and sources cited in Polcin, Douglas L., Henderson, Diane, Trocki, Karen, Evans, Kristy, and Wittman, Fried, "Community Context of Sober Living Homes" published by the National Institutes of Health.
[2] See, "Building Recovery: State Policy Guide for Supporting Recovery Housing" published by the National Council for Behavioral Health at www.thenationalcouncil.org.

    e.    Elevated subjects residents to drug and alcohol tests on a weekly basis to confirm that they remain in recovery while in an Elevated sober living home. Residents who fail these tests are evicted.

13. These steps only confirm what is almost always the case; that is, that recovering addicts are substantially impaired in numerous major life activities. Dr. Majer's report observes:

> Substance use disorders are unique because not only are they life-threatening, their effects go well beyond the use of a substance, effecting several important areas of functioning (e.g., employment/vocational, mental/emotional, financial, social/familial, recreational, health) that take years to correct and a lifetime dedication to maintain.

14. The future residents of the Residence are also handicapped because they are regarded as impaired by the HOA and Reed. In particular, because they suffer the impairment of addiction the HOA and Reed are denying them the ability to find shelter. The ability to find shelter is itself a major life activity. The combination of an impairment and conduct that limits a major life activity creates "regarded as" handicap.

15. Elevated residents share bedrooms, bathrooms, the living room, and the kitchen just like any other family. They purchase their groceries together every week, often eat meals together, and spend their free time together just like a family would.

16. Elevated facilitates transportation for residents when needed, provides assistance with work and employment opportunities (such as resume drafting, interview skill building), off site counseling, and access to drug and alcohol education groups to aid the residents in their recovery and prevent relapse.

17. Without the support services provided by Elevated and the family atmosphere created by sharing the living space the residents would be homeless or at a significantly increased risk of relapsing in their addiction to alcohol or drugs. Thus, they are not able to "use and enjoy a dwelling" without the sober living environment provided by Elevated.

**B. Elevated leases the Residence**

18. On February 24, 2019 Swanston and Elevated signed a residential lease for the house located at 5748 Clarendon Drive, Plano, Texas 75093-8547 (the "Residence"). The Residence is located in the Eastern District of Texas. The Lease specifies that it is "for residential use as a sober living facility."

19. Elevated and Swanston have spent approximately $40,00 in rent deposits and other expenses for preparation of the Residence to be used as a sober living home. They will incur future expenses of $5,000 per month in rent and approximately $3,000 per month for utilities, homeowner association dues, maintenance and similar expenses.

20. After the Lease was signed Elevated began making arrangements for four women to move from another sober living facility to the Residence. The anticipated move-in date is March 3, 2019.

**C. The HOA's efforts to interfere with Elevated's use of the Residence.**

21. The Residence is located in Windhaven Farms (the "Subdivision"), a residential real estate development in the City of Plano, Texas. The property in the Subdivision is subject to various dedicatory and restrictive covenants, including the "Amended and Restated Declaration of Covenants, Conditions and Restrictions" filed in the deed records for Collin County, Texas on December 29, 1995. This instrument and all subsequent amendments are referred to herein as the "Declarations." The Declarations are enforced by the HOA.

22. The Declarations include the following limitation on the use of property in the Subdivision:

> Residential Use. All Lots (excluding, however, those portions of platted lots on which certain Common Properties will be located) shall be used for residential purposes only. No building or structure shall be erected, altered, placed or permitted to remain on any Lot other than a single-family dwelling unit and a private garage for two

>    (2) or more automobiles. No building or structure on any Lot shall exceed two (2) stories in height.

This prohibition is referred to herein as the "residential use restriction."

23. Shortly after the Lease was signed Reed spoke with Swanston concerning the planned use of the Residence. During their conversation Reed made it plain that his primary objection to the use of the Residence as a sober living facility was his personal animus toward recovering addicts. He said, among other things, that he didn't move into the neighborhood so his children would be exposed to alcoholics and drug addicts, and that he regarded such individuals as likely to be dangerous criminals. These stereotypes are, of course, completely false. The residents of a sober living facility are by definition sober – something that cannot be said with certainty of any other resident of the Subdivision. There is also no evidence at all that residents of sober living homes are more likely to engage in criminal activity while residing in the home than other residents of a residential neighborhood. Reed's statements are proof of his personal discriminatory animus and that of the HOA.

24. On February 28, 2019 at Reed's direction the HOA sued Elevated's landlord, Fiona Hall, in the 219th Judicial District Court for Collin County, Texas (the "Lawsuit."). On March 1, 2019 the HOA filed an Amended Petition in the Lawsuit and obtained a Temporary Restraining Order purporting to forbid Ms. Hall and Elevated to house "multiple, unrelated individuals" at the Residence. Elevated was not made a party to the Lawsuit and has not been formally served with the March 1, 2019 TRO.

25. The Motion for Temporary Restraining Order included in the Amended Petition was supported by the affidavit of Reed, who purported to act on behalf of the HOA. The Reed affidavit and the Amended Petition assert that having unrelated individuals living in the Residence violates the residential use restriction quoted above.

26. There is nothing in the residential use restriction that limits use of the Residence or any other home in the Subdivision to related individuals. The provision contains two parts. The first concerns the use of the property, which must be "residential." The second concerns the kind of buildings that may be erected on a lot in the Subdivision and limits the main structure to a "single-family dwelling unit." In context, "single-family dwelling unit" refers only to a kind of structure, not to the use of that structure. See, *Collins v. City of El Campo*, 684 S.W.2d 756, 762 (Tex. App.--Corpus Christi 1984), writ refused NRE (Feb. 6, 1985), *Permian Basin Centers For Mental Health and Mental Retardation v. Alsobrook*, 723 S.W.2d 774, 774 (Tex. App.--El Paso 1986), writ refused NRE (July 15, 1987), *Schack v. Prop. Owners Assn. of Sunset Bay*, 555 S.W.3d 339, 349 (Tex. App.--Corpus Christi 2018).

27. The restriction to "residential" use does not preclude short term rentals or require that the occupants be members of a single family; it only requires that the occupants be using the Residence as just that. As the Texas Supreme Court has observed:

> "property is used for 'residential purposes' when those occupying it do so for ordinary living purposes.... [S]o long as the renters continue to relax, eat, sleep, bathe, and engage in other incidental activities, ... they are using the cabin for residential purposes."

*Tarr v. Timberwood Park Owners Assn., Inc.*, 556 S.W.3d 274, n. 14 (Tex. 2018), reh'g denied (Oct. 5, 2018) [quoting with approval, *Slaby v. Mt. River Estates Residential Ass'n, Inc.*, 100 So. 3d 569 (Ala. Civ. App. 2012)]. This applies even if the property owner is making money from renting the property: "We also agree with our sister courts nationwide and hold that Tarr did not violate the covenants solely by receiving income from using his property to facilitate his short-term-rental endeavor." *Id.*

28. It is clear the position taken by the HOA in the Lawsuit is completely contrary to the law of the State of Texas with respect to the interpretation of the residential use restriction and

that nothing in the Declarations prohibits the use of the Residence as a sober living facility housing unrelated individuals.

29. It is equally clear that unless enjoined from doing so the HOA will try to interfere in Elevated's use of the Residence as a sober living home, for it has already attempted to do so by suing Ms. Hall.

**D. Reed's personal liability.**

30. A few days before the Lawsuit was filed Reed spoke with Swanston about Elevated's use of the Residence. During that conversation Swanston explained what the sober living home would do and that the residents would be addicts in recovery who were not currently using drugs or alcohol. Mr. Reed stated explicitly that this did not matter, that he did not want to live next to alcoholics and drug addicts and that he moved to the Subdivision to get away from such people. From these statements it is evident that his actions were animated by explicitly discriminatory motives; indeed, the entire purpose of the lawsuit was to keep handicapped individuals out of the Subdivision because Mr. Reed regards those with handicaps as somehow less than human and unfit to be his neighbors.

## FIRST CLAIM FOR RELIEF
## (DISPARATE TREATMENT)

31. Paragraphs 1-27 above are incorporated into this section by reference.

32. The Residence is a "dwelling" within the meaning of 42 U.S.C. §3602(b).

33. On information and belief the HOA has never tried to prevent unrelated individuals from occupying a home in the Subdivision or to prevent a homeowner from renting to unrelated individuals. If Hall had merely rented the house to an unmarried couple or other group of unrelated individuals who were not in recovery from drug and alcohol addiction the HOA would never have tried to invoke the residential use restriction.

34. This different treatment of Plaintiffs based on their association with disabled individuals is an "unlawful act" described in 42 U.S.C. §3604(f)(1) and (f)(2) and therefore a "discriminatory housing practice" as defined in 42 U.S.C. §3602(f). Swanston and Elevated have invested more than $40,000 in leasing the Residence and preparing it for use as a sober living facility. They also will also lose money in the future, including the revenue from rents paid by the Residents if the HOA interferes with the operation of the sober living home.

35. As a result of their likely future losses the Swanston and Elevated are "aggrieved persons" as defined in 42 U.S.C. §3602(i) and are entitled to file suit under the Fair Housing Act and be granted the remedies set out in 42 U.S.C. §3613(c), including but not limited to:

   a. an award of damages,
   b. injunctive relief to prevent future discrimination
   c. a declaration that residential use restriction does not forbid the operation of a sober living or other group home in the Subdivision, and
   d. the recovery of their attorneys' fees and costs of court.

They are entitled to this relief from all the Defendants, jointly and severally.

## SECOND CLAIM FOR RELIEF
## (ENTITLEMENT TO REASONABLE ACCOMMODATION)

36. Paragraphs 1-27 above are incorporated into this section by reference.

37. In the alternative, should the Court find that the operation of a sober living home at the Residence does violate the residential use restriction Plaintiffs are entitled to a declaration that the HOA is required to waive that restriction as a reasonable accommodation under 42 U.S.C. § 3604(f)(3)(B). As described above, the services and structure of a sober living facility are necessary for its disabled residents to have an equal opportunity to use and enjoy a dwelling like the Residence the recovering addicts who will live in the Residence are almost always unable to remain sober outside of a sober living environment. The requested accommodation is reasonable on its face because, on information and belief, the HOA has never restricted the right of any owner

to lease or sublease a house in the subdivision and has never attempted to impose a requirement that all occupants of a home be related to each other. There is no evidence that the residents at the Residence are more likely than any other residents of the subdivision to pose any risk of harm to persons or property in the subdivision or that the operation of a sober living facility poses such a risk.

38. The denial of a request for accommodation under 42 U.S.C. §3604(f)(3)(B) would constitute an unlawful act of the kind described in 42 U.S.C. §3604(f)(1) and (f)(2), and therefore constitute a discriminatory housing practice as defined in 42 U.S.C. §3602(f), making the Plaintiffs aggrieved persons as described in 42 U.S.C. §3602(i). They are entitled to maintain this action pursuant to 42 U.S.C. §3613(a) and to the relief permitted by 42 U.S.C. §3613(c), including but not limited to:

    a. an award of damages,
    b. injunctive relief to prevent future discrimination, and
    c. the recovery of their attorneys' fees and costs of court.

## PRAYER

Based on the foregoing, Plaintiffs request that the Court:

- Enter judgment for the Plaintiffs and against the Defendants, jointly and severally, for the actual damages suffered by the Plaintiffs,

- Enjoin Defendants, their officers, employees, agents, successors and all other persons in active concert or participation with them from interfering, directly or indirectly with the operation of the sober living facility at the Residence, such injunction to specifically forbid the filing of any complaint with the City of Plano or the Plano Police Department,

- Enjoin Defendants their officers, employees, agents, successors and all other persons in active concert or participation with them from harassing or intimidating directly or through social media any of the Plaintiffs or the residents at the Residence,

- Enjoin Defendants, their officers, employees, agents, successors and all other persons in active concert or participation with them from treating the Plaintiffs and residents at the Residence in any manner that is different from the treatment of other owners and residents in the subdivision, and in particular from unequal enforcement of any of the Declarations, or the rules and policies of the subdivision or denial of access to any of the facilities or benefits available to residents of the subdivision,

- Order that all members of the HOA Board and all officers and employees of any management company employed by the HOA Board undergo FHA training as a condition to serving on the Board or acting as a management company to the HOA, such training to specifically include the obligations of an HOA or property management company with respect to sober living facilities and their residents.

- Award Plaintiffs their reasonable attorney fees and costs, pursuant to the FHA, 42 U.S.C. § 3613(c)(2) and as provided in their Third Claim for Relief.

- Grant such other and further relief as to which the Plaintiffs may find themselves justly entitled.

Dated March 3, 2019.

_____
Richard M. Hunt
Texas State Bar No. 10288700

HUNT HUEY PLLC
1717 McKinney Ave., Suite 700
Dallas, Texas 75202
Telephone: (214) 641-9182
Facsimile: (214) 279-6124
Email: rhunt@hunthuey.com

ATTORNEYS FOR CONSTANCE SWANSTON AND WOMEN'S ELEVATED SOBER LIVING LLC.